**Daniel CAMP, Petitioner–Appellant,**

v.

**M.L. SMITH, Warden, California Correctional Institution, Respondent–Appellee.**

No. 01–55214.

D.C. No. CV–97–02876–MMM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 2001.

Decided Nov. 26, 2001.

Before GOODWIN, WALLACE, and THOMAS, Circuit Judges.

MEMORANDUM *

Daniel Camp appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition. Camp alleges that the state trial court's decision to exclude evidence of witness Charles Noland's parole status violated his Sixth Amendment right to confront witnesses. Camp further alleges that he received ineffective assistance of counsel because of a conflict of interest arising from his counsel's divided loyalties to Camp and to Noland. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and review denial of a § 2254 petition de

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

novo. *See Bribiesca v. Galaza*, 215 F.3d 1015, 1018 (9th Cir.2000). We affirm.

Because the parties are familiar with the factual and procedural history of this case, we will not recount it here.

## I. Right to confront witnesses

Camp contends that he should have been permitted to cross-examine Noland about his parole status, because a witness who is on parole might be shown to be susceptible to police pressure, and inferentially, more likely to make a false identification. Camp claims that the court's decision to exclude evidence of Noland's parole status violated his Sixth Amendment right to confront witnesses.

We engage in a two-part inquiry to determine whether a possibly erroneous evidentiary ruling violates the Sixth Amendment. *See United States v. Munoz*, 233 F.3d 1117, 1134 (9th Cir.2000). If Noland's parole status was relevant to the credibility of Noland's testimony at Camp's murder trial, then we inquire whether other legitimate interests outweigh Camp's interest in presenting the evidence. *Id.* A Sixth Amendment violation occurred only if the trial court abused its discretion in excluding the evidence. *Id.* Even if the trial court abused its discretion, the error may have been harmless if the jury was given sufficient evidence upon which to assess the credibility of Noland as a witness. *United States v. Jenkins*, 884 F.2d 433, 435–436 (9th Cir.1989).

■ Although Noland's parole status bears no direct relationship to Camp's murder charges, it was relevant to determining whether Noland felt "pressured" to make an identification. Noland's credibility was crucial because he was the only eye witness who connected Camp to the crime. Given the importance of Noland's testimony, any evidence that might undermine his credibility was relevant, and the trial court

erred by excluding evidence of his parole status.

■ However, the trial court had already admitted much of Noland's criminal record into evidence, including his conviction as a child molester, the resulting two-year prison sentence, his registration as a sex offender, and the date he was released from prison. Even though the exclusion of Noland's parole status as irrelevant was error, the jury still had ample information to assess Noland's credibility. The defense engaged in sufficient cross-examination to impeach Noland's testimony. Accordingly, any infringement of his Sixth Amendment right to confront the witness was harmless beyond a reasonable doubt. *See United States v. Beardslee*, 204 F.3d 983, 983 (9th Cir.2000), *modifying* 197 F.3d 378 (9th Cir.1999).

## II Ineffective assistance of counsel

■ Camp alleges that his court-appointed counsel had an actual conflict of interest based on loyalties divided between Camp and Noland. A public defender represented Noland in an unrelated case and, in the course of the representation, obtained a probation report, which described Noland as intellectually limited and emotionally unstable. Camp contends that his counsel, also a public defender, but not the one that defended Noland, had access to the report and should have used it to attack Noland's credibility. He argues, without any documentation, that her divided loyalty prevented her from cross-examining Noland about his mental and emotional fitness.

To prevail on his ineffective assistance of counsel claim based on conflict of interest, Camp must show that "an actual conflict of interest adversely affected his lawyer's performance." *Sanders v. Ratelle*, 21 F.3d 1446, 1452 (9th Cir.1994) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct.

1708, 64 L.Ed.2d 333 (1980)). If Camp demonstrates both an actual conflict and a likely adverse effect, prejudice is presumed. *See Cuyler,* 446 U.S. at 349–50, 100 S.Ct. 1708.

The record does not indicate that the suggested conflict influenced the attorney's conduct. *See Maiden v. Bunnell,* 35 F.3d 477, 481 (9th Cir.1994). Even though counsel did not specifically cross-examine Noland about his "limited intellectual and emotional capabilities," she did raise Noland's fragile emotional state and the substantive nature of his conviction. In opposing the prosecution's pretrial motion to exclude evidence of Noland's parole status, counsel argued that Noland was vulnerable ("wimpy") and "eager . . . to please the police officers[.]" Additionally on cross-examination, counsel established that Noland was a convicted child molester and a registered sex offender. She also attacked Noland's credibility by highlighting inconsistencies in his testimony, including differences between Noland's physical descriptions of the shooter and Camp. In sum, we find no evidence that the alleged conflict adversely affected counsel's representation of Camp.

AFFIRMED.