Albert BRIBIESCA, Petitioner–
Appellee,

v.

George GALAZA, Warden, Respondent–
Appellant.

No. 99–55957

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 2000

Filed June 19, 2000

Corey J. Robins, Deputy Attorney General, Los Angeles, California, for the respondent-appellant.

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for the petitioner-appellee.

Before: THOMPSON, W. FLETCHER, and FISHER, Circuit Judges.

W. FLETCHER, Circuit Judge:

On November 7, 1988, petitioner Albert Bribiesca, then incarcerated in county jail, appeared in Los Angeles County Superior Court for pre-trial proceedings in his first-degree murder case. Defense counsel informed the court that Bribiesca wished to exercise his Sixth Amendment right to represent himself, but the court refused to allow Bribiesca to do so. Following a trial at which he was represented by counsel, Bribiesca was convicted. After exhausting his state court remedies, Bribiesca sought a writ of habeas corpus in federal district court under 28 U.S.C. § 2254. In a careful report and recommendation, the Magistrate Judge recommended that the writ be granted, and the district court, after an independent review, granted the writ. The state timely appealed. We have jurisdiction under 28 U.S.C. § 2253, and we affirm.

I

The case giving rise to this petition was one of two criminal cases pending simultaneously against Bribiesca in the state court. In addition to the murder charge at issue in this case, Bribiesca had previously been charged with heroin possession

in a separate case. Bribiesca was representing himself on the possession charge at the time the murder charge was filed in this case.

On September 28, 1988, at a hearing in the possession case, the prosecutor informed the court that Bribiesca was being investigated for a murder in the jail (the murder for which he was ultimately charged). At the hearing, the prosecutor stated:

> The people's position is that he would be impaired, in his own trial preparation on the case that he's pro per. Because of his danger to the jail community, he would have to be restricted in his ability to use the facility, and he would need an attorney appointed in order to safeguard his rights. We would ask that his pro per status be revoked and an attorney appointed for him.

Bribiesca indicated that a hearing had been scheduled to address the question of his access to the law library (referred to by the prosecutor as "the facility"). The trial judge responded:

> It appears to me, what appears to any reasonable person, your ability to represent yourself is hampered somewhat by reason of these charges [1] because your activity is going to be restricted until the charges are further investigated. What I'm willing to do is to appoint an attorney to represent you in this case so that you could continue to—so that your case could continue to preparation.

Bribiesca replied that he did not want an attorney, that he wanted to represent himself, and that he knew what he was doing in the law library.

The judge then ruled:

> I'm sure you do, but I'll tell you, Mr. Bribiesca, this is one of these things you and I come up with a difference of opinion. You don't think you ought to have an attorney, and I think that you do.

And when we have a difference of opinion like that, I'm the one that wins. So you're going to have an attorney.... I'm doing this because I think it is in your best interest to have it done because I find that by reason of the charges that have been leveled against you, that your ability to move about within the county jail is going to be restricted, and I'm concerned about your ability to represent yourself in that circumstance. I think that you have a constitutional right to be represented in this case. So, for that reason, I'm revoking your pro per status, and I'm appointing Ms. Rochlin to represent you.

Bribiesca was subsequently charged with first-degree murder. On November 7, 1988, the same trial judge conducted a preliminary conference on the murder charge. Bribiesca indicated through his counsel that he wished to represent himself. The prosecutor objected, stating, "Mr. Bribiesca's problems in the county jail have escalated to the point that it is my opinion he will no longer have free access of the pro per facility, therefore, he will be unable to give himself an adequate representation in court." Bribiesca's attorney informed the court that Bribiesca claimed that other defendants in similar situations had been transported to the library to use it on their own, and he suggested that the court defer ruling on Bribiesca's motion until the next status conference so that counsel could investigate the situation.

The court rejected this suggestion, instead ruling immediately on Bribiesca's request to represent himself:

> The court has in mind the circumstances that prompted the making of its order on September 28, 1988. Mr. Bribiesca is entitled to a fair trial and fair representation. He can't always have it exactly the way he wants. Perfection is beyond the reach of all of us. Application for

---

1. While charges, in the sense of accusations, had been leveled against Bribiesca at this point, no formal charges had yet been filed.

pro per status is denied. He will continue to represent you.

Bribiesca objected to the ruling, and the judge threatened to have him gagged. After a short verbal exchange with Bribiesca, the judge continued with the conference. The case later went to trial before a jury. Bribiesca was represented by counsel and was convicted.

On direct appeal, Bribiesca alleged that the trial court erred in denying his motion to represent himself. The California Court of Appeal noted in an unpublished opinion that the trial court had based its ruling on the reasons stated at the November 7 hearing but more fully developed at the September 28 hearing. It affirmed the conviction, postulating that the trial court's ruling may have been based on "Bribiesca's inability or unwillingness to follow the rules of procedure and courtroom protocol, as demonstrated in the prior case." The California Supreme Court denied Bribiesca's petition for review.

Bribiesca then filed a petition for a writ of habeas corpus in federal district court. The district court dismissed the petition without prejudice for failure to exhaust state remedies. Bribiesca did not appeal from the dismissal but, rather, filed a state habeas petition in California Superior Court. That court found that the trial judge "was aware" at the September 28 hearing that Bribiesca's movements and activities within the county jail system "were restricted," and stated that the trial court "reasoned that because of the restrictions place[d] upon Bribiesca as the result of his alleged behavior while in custody that he would be unable to meaningfully prepare and represent himself." The state court affirmed the trial court's denial

of Bribiesca's motion to represent himself because "Bribiesca's defiant response [was] a clear and unequivocal declaration of an unwillingness to abide by rules of courtroom protocol and procedure." The California Court of Appeal denied the petition both on the merits and as procedurally defaulted.[2] The California Supreme Court summarily denied the petition over a dissent by Justice Kennard.

Bribiesca then filed a second habeas petition in federal district court. The case was assigned to a Magistrate Judge, who recommended granting the writ. The district court adopted the magistrate's findings that Bribiesca was denied his Sixth Amendment right to self-representation and ordered that a conditional writ of habeas corpus be granted. This appeal followed.

## II

We review *de novo* a district court's decision to grant or deny a state prisoner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *McNab v. Kok*, 170 F.3d 1246, 1247 (9th Cir.1999). Under the Anti–Terrorism and Effective Death Penalty Act of 1996, a habeas petition will not be granted with respect to any claim adjudicated on the merits in a state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

**2.** The state does not argue before this court that petitioner's claims are procedurally defaulted. The California Court of Appeal based its procedural default decision on *In re Harris,* 5 Cal.4th 813, 829, 21 Cal.Rptr.2d 373, 855 P.2d 391 (1993); *In re Clark,* 5 Cal.4th 750, 765, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993); and *In re Waltreus,* 62 Cal.2d 218, 225, 42 Cal.Rptr. 9, 397 P.2d 1001 (1965). This court

has held, in light of the California Supreme Court's decision in *In re Robbins,* 18 Cal.4th 770, 77 Cal.Rptr.2d 153, 959 P.2d 311 (1998), that a pre–1998 denial of a constitutional claim in reliance on *Harris, Clark,* or *Waltreus* is not an independent and adequate state ground sufficient to erect a procedural bar. *See Park v. California,* 202 F.3d 1146, 1152 (9th Cir.2000).

The Supreme Court held in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), that a criminal defendant has a Sixth Amendment right to represent himself. This right exists despite the fact that, in most cases, a defendant would be better served if represented by counsel.

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly.... It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Id.* at 834, 95 S.Ct. 2525 (quoting *Illinois v. Allen,* 397 U.S. 337, 350–351, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)). The Court found that a defendant's technical legal knowledge is not relevant to a defendant's exercise of his right to self-representation, so long as the waiver of the right to counsel is competent:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id.* at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). While the trial judge may doubt the quality of representation that a defendant may provide for himself, the defendant must be allowed to exercise his right to self-representation so long as he knowingly and intelligently waives his right to counsel and is able and willing to abide by rules of procedure and courtroom protocol. *See McKaskle v. Wiggins,* 465 U.S. 168, 173, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

Applying *Faretta* in this case, the California courts noted that Bribiesca would not have had access to the law library and therefore could not have represented himself effectively, but they did not rest their decisions on a lack of library access. Rather, in affirming Bribiesca's conviction on direct review and in denying his state habeas petition on collateral review, they based their decisions on the ground that Bribiesca had demonstrated such obstructionist conduct that he could not abide by rules of courtroom procedure and protocol. This ground is not supported by the factual record in this case.

The asserted misconduct, such as it was, occurred during the November 7, 1988 preliminary conference during which the trial court denied Bribiesca the right to represent himself. In its totality, the courtroom exchange was as follows:

> The Court: Application for pro per status is denied. [Defense counsel] will continue to represent you.
>
> Counsel: Very well.
>
> Petitioner: In other words, you're going to deny me my constitutional rights under the Sixth Amendment? I don't want no attorney representing me right now at all.
>
> The Court: Mr. Bribiesca, you will speak through counsel, or you will not speak at all. If you persist in speaking, I will have you gagged. Is that clear?
>
> Petitioner: My constitutional right is denied.
>
> The Court: Do you want to be gagged?
>
> Petitioner: I don't know about all that gagging.
>
> The Court: You're going to know in a minute if you keep talking. Do you understand? Be quiet.
>
> Petitioner: I don't be quiet for nobody.

The Court: Set a trial date.

The federal district court correctly found that Bribiesca's misconduct took place *after* the trial court had denied his motion to represent himself. It thus could not have been, and was not in fact, the reason for the trial court's decision. We are doubtful that Bribiesca's misconduct, standing alone, was sufficient under *Faretta* to justify a trial court's denying him the right to represent himself. We do not need to decide that question here, however, for it is clear that the misconduct did not cause the denial; rather, if anything, the denial prompted the misconduct.

In its argument to us, the state asserts that the reviewing state courts also based their decisions on petitioner's "restricted status in the jail" and resulting lack of access to the law library. While the state courts referred to lack of library access, they did not rest their decisions on that ground. Even if they had, however, this would not have been a sufficient basis for denying of Bribiesca the right to represent himself.

■ An incarcerated criminal defendant who chooses to represent himself has a constitutional right to access to "law books ... or other tools" to assist him in preparing a defense. *See Milton v. Morris,* 767 F.2d 1443, 1446 (9th Cir.1985). If the state had unconstitutionally denied Bribiesca such access, that denial would have been an independent basis for relief. But there is nothing in the record before us to suggest that the state acted, or would have acted, unconstitutionally in restricting or denying such access. So long as the state did not restrict or deny access unconstitutionally, it would have been up to Bribiesca to decide whether, under the circumstances, he wished to represent himself. *Faretta* holds that "a defendant has a Sixth Amendment right to conduct his own defense, provided *only* that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom pro-

tocol." *McKaskle,* 465 U.S. at 173, 104 S.Ct. 944 (emphasis added).

■ In deciding whether a defendant has knowingly and intelligently decided to represent himself, the trial court is to look not to the quality of his representation, but rather to the quality of his decision. At its heart, the rule expounded by the Supreme Court in *Faretta* is a rule protecting individual autonomy. The state trial court plainly demonstrated that it misunderstood that rule when it stated, "you and I come up with a difference of opinion. You don't think you ought to have an attorney, and I think that you do.... I'm doing this because I think it is in your best interest to have it done ... I'm concerned about your ability to represent yourself in that circumstance." The trial court's ruling was contrary to clearly established federal law, as set forth by the Supreme Court in *Faretta* and *McKaskle.*

### III

For the foregoing reasons, we AFFIRM the decision of the district court.